1  Frank E. Scherkenbach (SBN 142549), scherkenbach@fr.com
   Fish & Richardson P.C.
2  225 Franklin Street
   Boston, MA 02110
3  Telephone: (617) 542-5070
4  Facsimile: (617) 542-8906

5  Christopher S. Marchese (SBN 170239), marchese@fr.com
   Seth M. Sproul (SBN 217711), sproul@fr.com
6  Fish & Richardson P.C.
7  12390 El Camino Real
   San Diego, California  92130
8  Telephone:     (858) 678-5070
   Facsimile:     (858) 678-5099
9
   Erin E. Kaiser (SBN 259926), kaiser@fr.com
10 Fish & Richardson P.C.
   500 Arguello Street, Suite 500
11 Redwood City, California  94063
12 Telephone:     (650) 839-5070
   Facsimile:     (650) 839-5071
13
   Attorneys for Defendants, Counterclaimants and Third-Party Plaintiffs
14 ViaSat, Inc. and Paradise Datacom, LLC

15

16                     UNITED STATES DISTRICT COURT

17                    NORTHERN DISTRICT OF CALIFORNIA

18                             OAKLAND DIVISION

19

| | |
|---|---|
| APPLIED SIGNAL TECHNOLOGY, INC. | Case No. 09-CV-02180-SBA |
| Plaintiff, | |
| v. | **VIASAT, INC. AND PARADISE DATACOM LLC'S NOTICE OF MOTION AND MOTION FOR ENTRY OF PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES** |
| EMERGING MARKETS COMMUNICATIONS, INC.; EMC SATCOM TECHNOLOGIES, INC.; PARADISE DATACOM, LLC; and VIASAT, INC., | |
| Defendants. | Date:   January 11, 2011<br>Time:   9:00 a.m. |
| AND RELATED CLAIMS. | Place:  Courtroom 1, 4th Floor<br>Judge:  Hon. Saundra B. Armstrong |

Case No. 09-CV-02180-SBA

# TABLE OF CONTENTS

                                                                                                                         **Page**

I.    INTRODUCTION ........................................................................................................... 2

II.   FACTUAL BACKGROUND ......................................................................................... 3

      A.   Negotiations ......................................................................................................... 3

      B.   Lawyers and Experts Representing AST and Comtech Prosecute
           Patents. ................................................................................................................. 4

III.  LEGAL STANDARD ..................................................................................................... 5

IV.   ARGUMENT .................................................................................................................. 7

      A.   ViaSat and Paradise's Proposed Prosecution Bar is Consistent with
           the Subject Matter of the Patents-in-Suit. ............................................................ 7

      B.   ViaSat and Paradise's Proposed Prosecution Bar Is Consistent with
           the Subject Matter of the Technology at Issue. ................................................... 8

      C.   AST and Comtech's Narrow Prosecution Bar Is Inconsistent with
           the Protective Order's Purpose. .......................................................................... 10

V.    CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Avocent Redmond Corp. v. Rose Electronics*,
   242 F.R.D. 574 (W.D. Wash. 2007) ............................................................................. 10

*Brown Bag Software v. Symantec Corp.*,
   960 F.2d 1465 (9th Cir. 1992) ............................................................................... 5, 6, 7

*Chan v. Intuit, Inc.*,
   218 F.R.D. 659 (N.D. Cal. 2003) ............................................................................ 5, 10

*Cheah IP LLC v. Plaxo, Inc.*,
   2009 WL 1190331 (N.D. Cal. May 4, 2009) .................................................................. 6

*Commissariat A L'Energie Atomique v. Dell Computer Corp.*,
   2004 WL 119696 (D. Del. 2004) .................................................................................... 6

*Gen-Probe Inc. v. Becton, Dickinson and Co.*,
   267 F.R.D. 679 (S.D. Cal. 2010) ............................................................................ 6, 7, 9

*In re Deutsche Bank Trust Co. Americas*,
   605 F.3d 1373 (Fed. Cir. 2010) ............................................................................ 5, 6, 10

*Medtronic, Inc. v. Guidant Corp.*,
   2001 WL 34784493 (D. Minn. 2001) ............................................................................. 6

*Northbrook Digital, LLC v. Vendio Services, Inc.*,
   625 F.Supp.2d 728 (D. Minn. 2008) ............................................................................... 6

*U.S. Steel Corp. v. U.S.*,
   730 F.2d 1465 (Fed.Cir.1984) ......................................................................................... 5

*Wi-Lan v. Acer, Inc.*,
   2009 WL 1766143 (E.D. Tex. June 23, 2009) ............................................................... 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(c)(7) ........................................................................................................ 1, 5

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on January 11, 2011, or as soon as the matter can be heard, in the courtroom of the Honorable Saundra B. Armstrong, ViaSat, Inc. ("ViaSat") and Paradise Datacom LLC ("Paradise") will, and do hereby, move this Court for entry of a protective order controlling the disclosure and dissemination of confidential business, technical and financial information that may be produced during the discovery process in this case.

This Motion is made pursuant to Rule 26(c) of the Federal Rules of Civil Procedure on the grounds that good cause exists for the entry of a protective order limiting the distribution of the parties' confidential business, technical, and financial information. ViaSat and Paradise, by and through their counsel of record, have, in good faith but without success, conferred with opposing counsel in an effort to resolve this dispute without court action. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Seth M. Sproul ("Sproul Decl."), the Declaration of Don Becker ("Becker Decl."), and the [Proposed] Protective Order, all filed concurrently herewith, as well as any additional materials as may be presented to this Court at a hearing on this motion.

Dated: October 20, 2010                    FISH & RICHARDSON P.C.

                                           By: */s/ Seth M. Sproul*
                                               Seth M. Sproul (SBN 217711)
                                               sproul@fr.com

                                           Defendants, Counterclaimants and Third-Party
                                           Plaintiff ViaSat, Inc. and Paradise Datacom,
                                           LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     INTRODUCTION

This is a patent infringement suit between competing companies: ViaSat, Inc. ("ViaSat") and Paradise Datacom LLC ("Paradise") on one side, and Applied Signal Technology, Inc. ("AST") and Comtech EF Data Corp. ("Comtech") on the other side (collectively, "the parties"). The products accused of infringement include electronic hardware and software that is considered highly confidential and sensitive to the party that developed the technology. To protect this technology, the parties have spent several months negotiating a protective order that provides certain protections extending beyond the model patent protective order for the Northern District of California. The parties have reached agreement on all provisions except for the scope of the Prosecution Bar, which bans persons with access to highly confidential information from preparing and prosecuting patents in the field of the technology at issue.

The Proposed Protective Order is attached to this motion as Exhibit A[1], and Section 10 contains the disputed Prosecution Bar. The parties agree on almost all of the language in Section 10, but have reached an impasse over the scope of the subject matter covered by the Prosecution Bar. ViaSat and Paradise propose that the scope of the Prosecution Bar should be "self-interference cancellation," which is the technology disclosed in the patents-in-suit and the technology accused of infringement. AST and Comtech argue for a narrower Prosecution Bar that is limited to "self-interference cancellation technology for *shared-channel satellite communications*."

The question thus boils down to whether the technology at issue is limited to "shared-channel satellite communications." It is not. The accused technology can be applied beyond shared-channel satellite communications. Indeed, the patents themselves as well as AST's own discovery requests support the broader language proposed by ViaSat and Paradise. Throughout the parties' negotiations, AST and Comtech have failed to articulate any legitimate rationale for their proposed narrow scope. In light of the evidence, ViaSat and Paradise respectfully urge that their proposal, not AST and Comtech's narrow proposal, is of the correct scope.

---

[1] Exhibits are attached to the concurrently filed declaration of Seth M. Sproul.

In order to protect the highly sensitive disclosures in this case, and for all the reasons discussed below, ViaSat and Paradise respectfully request that this Court enter their Proposed Protective Order, attached as Exhibit A.

## II. FACTUAL BACKGROUND

### A. Negotiations

The parties have attempted in good faith to resolve this protective order dispute. The attached communications at Exhibits F and G detail in part the history of the parties' meet and confer conferences. The parties began negotiations over the protective order as early as October 2009, when Comtech was not yet a party to the litigation and AST was represented by former counsel. On February 19, 2010, the Court entered the default model protective order that was published on this District's website at that time and held that "[i]t shall remain in effect until parties stipulate to a different order." D.I. 52 ("Magistrate Judge Bernard Zimmerman Minute Order").

At least as early as April 2010, AST and Comtech's current counsel became involved in the negotiations regarding the protective order. Over the following six months, the parties engaged in numerous telephone conferences and exchanged multiple emails and draft protective orders. *See, e.g.,* Exs. B, C and D. On July 12, 2010, AST and Comtech informed ViaSat and Paradise that it disagreed with the scope of the prosecution bar as drafted by ViaSat and Paradise, applying the ban to patents related to "self-interference cancellation." Ex. E. AST and Comtech instead advocated the language "self-interference cancellation technology for shared-channel satellite communications." *Id.* In an email dated July 29, 2010, AST and Comtech stated: "We continue to object to the scope of the prosecution bar you advocate. It is overly broad and believe it will interfere with our ability to retain additional experts if needed in the future." Ex. F. Despite requests to do so, AST and Comtech failed to provide a narrowing amendment for ViaSat and Paradise to consider. Ex. G. Instead, AST and Comtech maintained their original proposal of "self-interference cancellation technology for shared-channel satellite communications." *See* Ex. E. On August 30 and 31, 2010, the parties executed an agreement stipulating to all provisions of the Proposed Protective Order with the exception of the Prosecution Bar contained in Section 10. Ex. H.

1    On October 19, 2010, after meeting and conferring on the issue, the parties confirmed they
2    could not reach agreement on the scope of the prosecution bar. Ex. K.

3    **B.    Lawyers and Experts Representing AST and Comtech Prosecute Patents.**

4    The scope of the Prosecution Bar is especially pertinent because the firms representing AST
5    and Comtech are all involved in the prosecution of patents. According to the website of AST and
6    Comtech's lead counsel, Sanders & Parks is involved in general patent counseling, patent licensing,
7    contracts, sales and transfers of patents. *See* http://www.sandersandparks.com/-
8    PracticeAreas/Patents.asp. Similarly, Dr. James Farmer, who has appeared for AST and Comtech
9    in this case, has a practice that "involves patent litigation and prosecution, opinion preparation,
10   license agreements, due diligence, and counseling in a wide range of technical disciplines including
11   aerospace, mechanical, electrical, and chemical engineering."
12   http://www.vancott.com/attorneys/view/74. Likewise, another AST and Comtech lawyer, Dimitriy
13   Andreyev, specializes in "all aspects of intellectual property law, including prosecution,
14   acquisition, valuation and enforcement of patents, trademarks, and copyright."
15   http://flagshipip.com/index_files/Page1283.htm.

16   The same is true of the two experts engaged by AST: Dr. Stephen Heppe and Dr. Sayfe
17   Kiaei. According to Dr. Heppe's CV, from 2002-2009, he was Vice President and Chief Scientist
18   for Insitu, Inc., where his responsibilities included "management of the Company's portfolio of
19   intellectual property." Ex. I. Dr. Heppe himself identified seven patents on which he is listed as an
20   inventor. *Id*. Dr. Kiaei's CV similarly lists ten of his own patents and disclosures. Ex. J.
21   Additionally, in his role at Arizona State University, Dr. Kiaei is "responsible for identifying
22   research opportunities," "[w]orking with Vice President for Research and Schools on University-
23   wide collaborations," and is involved in "[s]trategic plans for future growth of centers, research,
24   and related areas." *Id*.

25   Although neither ViaSat nor Paradise wish to unnecessarily constrain the practices of any of
26   AST and Comtech's representatives, their prosecution work combined with their access to ViaSat
27   and Paradise's technical information necessitates an appropriately tailored Prosecution Bar.

28

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) empowers courts to issue protective orders "for good cause shown" to prevent "undue burden or expense" by ordering, *inter alia*, "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(7). Courts balance the risk of inadvertent disclosure and harm to the disclosing party against the risk that the protective order will impair the prosecution or defense of the other party's claims. *See, e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992); *Chan v. Intuit, Inc.*, 218 F.R.D. 659, 662 (N.D. Cal. 2003); *see also U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468 (Fed.Cir.1984) ("Inadvertence . . . is no respecter of its victims").

Courts have consistently entered protective orders that bar prosecution of related patents. *See, e.g., Intuit*, 218 F.R.D. at 661-62. The reason for denying access in the patent prosecution realm is that an individual who has accessed an opposing party's highly confidential information cannot "turn off his brain" when preparing or prosecuting future patents and is instead likely to incorporate that information into his patent applications, even if such incorporation is inadvertent. *Id*. As the Federal Circuit recently stated, "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Trust Co. Americas,* 605 F.3d 1373, 1378 (Fed. Cir. 2010) (omitting internal citations); *see also Intuit*, 218 F.R.D. at 662 (granting two-year patent prosecution prohibition because "[i]f counsel . . . receives confidential information that could pertain to future patent prosecution, counsel would have to compartmentalize the information so that it does not inform counsel's decisions pertaining to those future patent prosecutions"). This risk exists for any individual—including in-house counsel, outside counsel, experts, and consultants—who have access to confidential information and may prepare and/or prosecute similar patents in the future. *See, e.g., Wi-Lan v. Acer, Inc.,* 2009 WL 1766143, *1 (E.D. Tex. June 23, 2009) (entering a protective order with a unilateral prosecution bar preventing plaintiff's "employees, officers, directors, in-house counsel, experts or consultants who personally receive any material designated 'Attorneys' Eyes Only' from using that information in the prosecution of

1    patents"); *Northbrook Digital, LLC v. Vendio Services, Inc.*, 625 F.Supp.2d 728, 743 (D. Minn.
2    2008) ("Wolfe's activities before the PTO in prosecuting continuation applications related to the
3    patents in suit are not compatible with allowing him to review, either as an attorney or as an expert
4    witness, Vendio's confidential technical information."). The key inquiry in determining whether a
5    prosecution bar applies to an individual is whether that individual is involved in "competitive
6    decision making." *See Brown Bag*, 960 F.2d at 1470.

7    The Federal Circuit has held that "a party seeking imposition of a patent prosecution bar
8    must show that the information designated to trigger the bar, the scope of activities prohibited by
9    the bar, the duration of the bar, and *the subject matter covered by the bar* reasonably reflect the risk
10   presented by the disclosure of proprietary competitive information." *Deutsche Bank*, 605 F.3d at
11   1381 (emphasis added). With respect to the subject matter covered by the bar, the protective order
12   need not "specifically define the types of materials to which any prosecution bar should be
13   limited." *Cheah IP LLC v. Plaxo, Inc.*, 2009 WL 1190331, *3 (N.D. Cal. May 4, 2009) (omitting
14   internal citations). Courts routinely define the scope of the prosecution bar as "relating to the
15   subject matter of the patents-in-suit," *see, e.g., id* (*citing Cummins-Allison Corp. v. Glory Ltd.*,
16   2003 U.S. Dist. LEXIS 23653, at *31-32 (N.D.Ill. Jan. 2, 2004)), or "relating to the subject matter
17   of the technology at issue," *see, e.g., Commissariat A L'Energie Atomique v. Dell Computer Corp.*,
18   2004 WL 119696, *2 (D. Del. 2004); *Medtronic, Inc. v. Guidant Corp.*, 2001 WL 34784493, *4-5
19   (D. Minn. 2001).

20   The Southern District of California was recently asked to evaluate the scope of technology
21   in a proposed prosecution bar. *Gen-Probe Inc. v. Becton, Dickinson and Co.*, 267 F.R.D. 679, 688
22   (S.D. Cal. 2010). In that case, the plaintiff proposed a prosecution bar applying to patents "in the
23   area of molecular diagnostics," and the defendant, arguing that this scope was too broad, asked the
24   court to limit the bar to a specific narrow aspect of molecular diagnostics. *Id*. As support for their
25   respective positions, the parties cited the patents-in-suit, the asserted claims, and document
26   requests. *Id*. The court held that "[b]ased on this conflicting information, and the lack of an
27   independent expert opinion that might help define the scope of the technology at issue, the court
28   will not impose a more narrowly-tailored version of the prosecution bar." *Id*.

Here, the risk of inadvertent disclosure of ViaSat's technology and the resulting harm to ViaSat and Paradise outweighs the minimal effect, if any, of broader bar language on AST and Comtech's prosecution of their case. *See, e.g.*, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

## IV.  ARGUMENT

ViaSat and Paradise's Proposed Protective Order, attached herein as Exhibit A, includes at Section 10 a Prosecution Bar, which provides in part:

> Absent the written consent of the Producing Party, any individual who receives access to documents or any other source containing commercially sensitive technical information designated by the Producing Party as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL − ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL − SOURCE CODE" information shall not be involved in the prosecution or preparation of any patent applications relating to self-interference cancellation, including without limitation the patents asserted in this action or any patent or application claiming priority or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office").

AST and Comtech do not dispute that the protective order for this case should include a Prosecution Bar. Indeed, they agree on all aspects of Section 10 above, except they argue that it should be narrowed to include only "patent applications relating to self-interference cancellation technology *for shared-channel satellite communications*." Ex. K (emphasis added). Given the potential for ViaSat's PCMA technology to be used and applied beyond satellite communications, ViaSat's and Paradise's proposed scope is reasonable. On the other hand, as in *Gen-Probe*, AST and Comtech's proposed narrowing is without support, contradicts the purpose of the Prosecution Bar, and should thus be rejected.

### A.  ViaSat and Paradise's Proposed Prosecution Bar is Consistent with the Subject Matter of the Patents-in-Suit.

The patents-in-suit—both ViaSat's and AST's—deal with self-interference technology and are not limited to shared-channel satellite communications. Even the titles of ViaSat's three patents-in-suit suggest the broader application: U.S. Patent No. 6,907,093 is entitled "Method and Apparatus for Relayed Communication using Band-Pass Signals for Self-Interference Cancellation"; U.S. Patent No. 6,725,017 is entitled "Multi-channel Self-Interference Cancellation

1  Method and Apparatus for Relayed Communication"; and U.S. Patent No. 6,011,952 is entitled
2  "Self-Interference Cancellation for Relayed Communication Networks."  Furthermore, while
3  ViaSat's patents-in-suit are described in terms of satellite applications, they are all explicitly
4  applicable to "a wide variety of implementations."  '093 patent at col. 7:28-31; *see also* '952 patent
5  at col. 1:36-38 (providing an illustrative example of how the patented invention can be used in
6  "terrestrial line-of-sight radio communication"); '017 patent at col. 1:24-25 ("This invention relates
7  to a radio frequency or optical communication system . . .").
8        Similarly, AST's own patents-in-suit explicitly teach away from narrowing the subject
9  matter to "shared channel satellite communications" and thus support ViaSat and Paradise's
10  position.  The patents themselves provide:

11  > This invention is particularly applicable to satellite communications systems in which a satellite transponder translates the frequency of a received uplink signal to a new frequency and retransmits the received signal as a downlink signal on the new frequency, and will be described in that context. *It will be appreciated, however, that this is illustrative of only one utility of the invention, and that the invention may be employed with any communication system which relays a received signal of interest as a composite signal that includes a replica of the receiving site's own transmitted signal. Examples include wireless and wireline communications systems.*

16  '641 patent at col. 4:33-44; '104 patent at col. 4:39-50 (emphasis added).  This disclosure clearly
17  contradicts the argument from AST and Comtech that the subject matter of the patents-in-suit is
18  limited to satellite communications, let alone specifically shared-channel satellite communications.
19        To be effective, the Prosecution Bar in this case should at least match the technology of the
20  patents-in-suit.  The scope proposed by ViaSat and AST does this (and indeed is already arguably
21  narrower than it needs to be), whereas AST and Comtech's proposed scope does not.

22        **B.**    **ViaSat and Paradise's Proposed Prosecution Bar Is Consistent with the Subject Matter of the Technology at Issue.**

24        In addition to the subject matter of the patents-in-suit, courts also look more broadly to the
25  accused technology at issue in determining the scope of the Prosecution Bar.  Here, the accused
26  technology is not limited to "shared-channel satellite communication" applications.  The target of
27  AST's infringement allegations is ViaSat's Paired-Carrier Multiple Access ("PCMA") technology.
28  As explained in the attached declaration of Mr. Becker, PCMA is not necessarily limited to shared

channel satellite applications but can extend to cross channel scenarios. Becker Decl. at ¶ 6. Similarly, PCMA is not necessarily limited to satellite applications but instead can be used in other technologies, such as microwaves and wireless communications. *Id*. While ViaSat's and Paradise's accused products are currently implemented only as shared-channel satellite applications, the underlying PCMA technology which is at issue can be applied to other fields. *Id*. at ¶¶ 5-6. The narrow prosecution bar proposed by AST and Comtech would fail to protect the full scope of information relating to ViaSat's PCMA technology, leaving ViaSat and Paradise's confidential information vulnerable to exploitation in the future prosecution of others' patents.

AST's discovery requests further indicate that the technology at issue in this case is consistent with ViaSat and Paradise's broader Prosecution Bar. As was the case in *Gen-Probe*, AST's discovery demands went beyond shared-channel satellite communications, thus demonstrating AST's real belief regarding the full potential scope of the technology at issue. *Gen-Probe*, 267 F.R.D. at 688. For instance, in AST's Interrogatory No. 1 to both ViaSat and Paradise, served on November 17, 2009, AST requested: "Identify each product, including project name, internal name, trade name, and/or part number, that has been made, used, sold, offered for sale or imported by ViaSat that incorporates or utilizes *self-interference cancellation technology*." Ex. L (emphasis added). ViaSat and Paradise initially objected to these interrogatories as overly broad, but AST maintained that its use of the term "self-interference cancellation technology" was appropriate. In fact, as recently as August 3, 2010, counsel for AST pointed out that "ViaSat itself uses the term 'self-interference cancellation' in each of its asserted patents in suit, including the title of each patent." Ex. M. AST and Comtech therefore take the conflicting position of asking for broad discovery but only a narrow Prosecution Bar.[2] Such a discrepancy would give individuals

---

[2] In their opposition brief, AST and Comtech may argue that ViaSat and Paradise have likewise proffered disparate positions regarding the proposed Prosecution Bar and discovery responses. As mentioned above, ViaSat and Paradise did originally object to AST's discovery requests pertaining to "self-interference cancellation technology." However, the reason for advocating this narrower scope in discovery was to avoid unduly burdensome document collection requirements. Indeed, the relevant scope for discovery is different from that of identifying prohibited subject matter for a patent application, and in this case, the current accused products relate to the field of satellite communications. Thus, the scope of discovery can reasonably be tailored, and as such, ViaSat and Paradise's original positions were not contradictory. On the other hand, in order to achieve its purpose, the prosecution bar must be at least as broad as the

access to highly confidential materials outside the scope of the Prosecution Bar, while permitting them to prosecute patents that could potentially employ such technology. Prosecution bars are meant to prevent this very situation. *See, e.g., Intuit*, 218 F.R.D. at 661-62. Thus, the accused products as well as AST's own discovery requests clearly indicate that the subject matter of the patents-in-suit is "self-interference cancellation."

### C. AST and Comtech's Narrow Prosecution Bar Is Inconsistent with the Protective Order's Purpose.

As explained above, AST and Comtech attempt to narrow the Prosecution Bar beyond what is acceptable in light of the scope of the patents-in-suit and technology at issue in this case. This attempted narrowing contradicts the very purpose of the Prosecution Bar, and indeed the protective order itself. The goal of the protective order is to prevent the use of confidential information obtained in a lawsuit for purposes outside of the lawsuit and to avoid inadvertent compromise of this confidential information. *See Deutsche Bank*, 605 F.3d at 1378. In the course of this litigation, ViaSat and Paradise will produce documents and materials including highly sensitive source code and schematics. Knowledge obtained from ViaSat and Paradise documents can be used in various applications not limited to shared-channel satellite communications. For instance, if an individual is allowed access to ViaSat or Paradise's confidential information and then is involved in the preparation or prosecution of a patent relating to self-interference cancellation in, for example, wireless applications, this confidential information can, and inevitably will, inform that person's decisions about that patent. Though inadvertent, this is unacceptable, and goes to the heart of the protection afforded by the Prosecution Bar.

Furthermore, in evaluating prosecution bars, courts must balance the "one party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors." *Avocent Redmond Corp. v. Rose Electronics*, 242 F.R.D. 574, 577 (W.D. Wash. 2007) (citing *U.S. Steel Corp.*, 730 F.2d at 1468). AST and Comtech have not demonstrated how

---

confidential information produced during discovery. Therefore, AST's contradictory positions cannot be reconciled. In any case, ViaSat and Paradise have since agreed to drop their objections to the term "self-interference cancellation technology" as it is used in AST's discovery requests.

1  the broader Prosecution Bar will impair their prosecution or defense in the present litigation. Counsel for AST and Comtech merely state that they believe ViaSat and Comtech's proposed Prosecution Bar "is overly broad and . . . will interfere with [their] ability to retain additional experts if needed in the future." Ex. F (7/29/2010 email from Breit to Marchese). However, this speculative concern is at best negligible given that AST and Comtech have already retained two experts, both of whom have already viewed ViaSat's most sensitive PCMA source code. *See id*. AST's concern is also overstated, as ViaSat and Paradise encountered no hardship in identifying potential experts willing to agree to the proposed Prosecution Bar.

Therefore, in evaluating the risk/hardship balancing test, it is clear that the risk of harm to the disclosing parties significantly outweighs any effect on either of the other parties' opportunity to develop its case on the facts. As described above, a narrower prosecution bar would pose real risks to ViaSat and AST. Moreover, the reasoning behind the prosecution bar applies to experts as well as attorneys. In fact, experts who pursue patents themselves, as AST's experts do, potentially pose an even greater risk in that they cannot "turn off their brains" while researching and developing possible new inventions. Despite an expert's best intentions, the confidential information learned through the litigation is likely to inform future patenting applications.

## V. CONCLUSION

For the foregoing reasons, ViaSat and Paradise respectfully request that the Court grant this motion and enter the form of protective order proposed at Exhibit A.

Dated: October 20, 2010                FISH & RICHARDSON P.C.

                                       By:  */s/ Seth M. Sproul*
                                            Seth M. Sproul (SBN 217711)
                                            sproul@fr.com

                                       Defendants, Counterclaimants and Third-Party Plaintiff ViaSat, Inc. and Paradise Datacom, LLC