1  RICK N. BRYSON (*Pro hac vice*)
   Rick.Bryson@SandersParks.com
2  MICHELLE BREIT, Bar No. 133143
   Michelle.Breit@SandersParks.com
3  BRETT M. HAGER (*Pro hac vice*)
   Brett.Hager@SandersParks.com
4  BENJAMIN ERLICK (*Pro hac vice*)
   Benjamin.Erlick@SandersParks.com
5  SANDERS & PARKS P.C.
   3030 N. Third Street, Suite 1300
6  Phoenix, AZ 85012-3099
   Telephone:  (602) 532-5600
7  Facsimile:  (602) 532-5700

8  JAMES C. OTTESON, Bar No. 157781
   jim@agilityiplaw.com
9  MONICA MUCCHETTI ENO, Bar No. 164107
   monica@agilityiplaw.com
10 AGILITY IP LAW
   1900 University Circle, Suite 201
11 East Palo Alto, CA 94303
   Telephone:  (650) 227-4800
12 Facsimile:   (650) 318-3483

13 Attorneys for Plaintiff and Counterclaim Defendant
   APPLIED SIGNAL TECHNOLOGY, INC. and
14 Third Party Defendant
   COMTECH EF DATA CORP.

15

16                  UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA

18                        OAKLAND DIVISION

19

20 APPLIED SIGNAL TECHNOLOGY, INC.,          CASE NO.:  09-CV-02180-SBA

21              Plaintiff,

22        v.                                 **AST AND COMTECH'S RESPONSE
                                             TO VIASAT AND PARADISE'S
23 EMERGING MARKETS COMMUNICATIONS,          MOTION FOR PROTECTIVE
   INC. EMC SATCOM TECHNOLOGIES, INC.,       ORDER**
24 PARADISE DATACOM, LLC, and VIASAT,
   INC.,
25
              Defendants.
26

27 AND RELATED COUNTERCLAIMS AND
   THIRD PARTY CLAIMS
28

1

## **Introduction**

2      Plaintiff Applied Signal Technology and Third Party Defendant Comtech EF Data Corp.

3 (collectively "AST") submit this Response to Motion for Entry of Protective Order filed by

4 Defendants ViaSat and Paradise on October 20, 2010.  AST does not dispute the necessity of a

5 protective order.  But the patent prosecution bar in Defendants' proposed protective order is

6 overly broad, in two major respects.  First, the prosecution bar encompasses expert witnesses

7 and, as a result, precludes and/or limits experts from working in their own fields of expertise.

8 This limitation has precluded AST from hiring certain experts based on their reluctance to be

9 subject to the proposed prosecution bar.  Second, the prosecution bar encompasses too many

10 categories of technology because it does not narrowly define the scope of the prosecution bar.

11      Under the controlling authority from the Federal Circuit, Defendants have the burden to

12 show good cause for the requested prosecution bar.  They have failed to meet their burden.

13 Defendants have not shown any true risk of inadvertent disclosure on behalf of AST's experts,

14 and have failed to balance the potential harm to AST against these "potential" risks.  Because the

15 prosecution bar is overly broad and unnecessarily includes the parties' experts under the

16 prosecution bar, the Court should deny Defendants' request for the proposed bar.  Instead, the

17 Court should the prosecution bar to apply only to the parties and their attorneys, not to experts.

18 Additionally, any prosecution bar should be limited to the proper scope of "self-interference

19 cancellation technology for shared-channel satellite communications," not to "self-interference

20 cancellation" technology generally (as suggested by Defendants).

21

## **Factual Background**

22      Defendants have misstated AST's primary position regarding the scope of the

23 prosecution bar in the proposed protective order.  Defendants are correct that the parties agree on

24 the vast majority of the terms included in the proposed order.  The only term that stands in the

25 way of the fully negotiated protective order is the patent prosecution bar.  [Dkt. 178-1, ¶ 10.]

26      AST has objected to the proposed prosecution bar under the prevailing standard recently

27 set forth by the Federal Circuit.  *See In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373,

28 1378 (Fed. Cir. 2010).  Following the analysis of *Deutsche Bank*, AST has consistently objected

to the prosecution bar because Defendants have not articulated any substantial risk of inadvertent disclosure, and Defendants have failed to provide any evidence as to why the experts retained by the parties in this case should be subject to the overly broad prosecution bar set forth in the proposed protective order.

## Argument

### I.   THE FEDERAL CIRCUIT REQUIRES A SUBSTANTIATED SHOWING OF RISK TO JUSTIFY A PATENT PROSECUTION BAR.

The entry of a prosecution bar is not automatic.[1]  Rather, under *Deutsche Bank*, a party seeking a patent prosecution bar in a protective order has the burden of showing good cause for the prosecution restriction.  *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed Cir. 2010).  Defendants cite *Deutsche Bank* in their Motion for Protective Order, but do not ever fully analyze its relevance or their obligations that arise from *Deutsche Bank*.

Defendants completely fail to meet their burden under *Deutsche Bank* to show why such a broad prosecution bar is necessary.  The purpose of a prosecution bar is to further protect inadvertent disclosure of competitive information learned during litigation.  Prosecution bars act as *supplemental* protection for confidential and sensitive information that is *already* safeguarded by a protective order.  Due to its supplemental nature, the party seeking the prosecution bar must provide *additional* evidence as to why the prosecution bar is needed to protect confidential information from inadvertent disclosure.  *See Deutsche Bank*, 605 F.3d at 1378.  ("Typically, protective orders include provisions specifying that designated confidential information may be used only for purposes of the current litigation.  Such provisions are generally accepted as an effective way of protecting sensitive information while granting trial counsel limited access to it for purposes of the litigation.").

The first factor in showing good cause for a prosecution bar is whether there is a substantiated risk of inadvertent disclosure.  *Id.* at 1378-1379.  This risk of inadvertent disclosure

---

[1]     The Federal Circuit recently held that the entry of a prosecution bar is an issue that is patent-specific and should be governed by the Federal Circuit's guidelines.  *In re Deutsche Bank*, 605 F.3d at 1377.

must be made on a person-by-person basis and can turn on whether the person is involved in "competitive decision-making" with the party itself. *Id.*; *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). Some courts have held that patent prosecution inherently involves competitive decision making. *Deutsche Bank*, 605 F.3d at 1379. Others have held that prosecution does not raise a presumption of unacceptable risk of inadvertent disclosure. *Id.* *Deutsche Bank* reemphasized that each individual must be examined on a person-by-person basis to determine whether they are a competitive decision maker that presents a risk of inadvertent disclosure of confidential information. *Id.* at 1379.

Here, Defendants have failed to identify any specific risk of inadvertent disclosure of confidential information on behalf of AST's experts. Instead, Defendants argue that AST's counsel and experts have experience in prosecuting patents, which Defendants allege, by itself, should give rise to the prosecution bar. Defendants' position is legally unsupported.

First, the sole fact that AST's experts have filed patent applications does not lead to a presumption that AST's experts are involved in competitive decision making for AST. There is no such presumption. *Deutsche Bank*, 605 F.3d 1379 ("[I]t is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decisionmaking. Indeed, 'denying access to [a party's] outside counsel on the ground that they also prosecute patents for [that party] is the type of generalization counseled against in *U.S. Steel.*'"). The *Deutsche Bank* opinion discusses prosecution bars in connection with prosecution bars against litigation counsel, but the rationale applies equally to a party's experts.

Second, the "potential" or "threatened" breaches of the protective order that Defendants have identified do not constitute adequate evidence that justify a prosecution bar. The "threat" of inadvertent disclosure, standing alone, is not enough to justify a protective order barring prosecution of similar patents. *AFP Advanced Food Products LLC v. Snyder's of Hanover Manufacturing*, 2006 WL 47374 (E.D.Pa. 2006) ("Barring [...] attorneys from prosecuting similar patents for two years following this suit, without some tangible reason or good cause other than the general threat of inadvertent misuse of discovered materials, is the exact type of overly broad and generalized fear rejected in *Shingara, U.S. Steel,* and *In re Sibia Neurosciences,*

1  *Inc.*"); *R.R. Donnelley & Sons Co. v. Quark, Inc.*, 2007 WL 61885 (D. Del. Jan. 4, 2007) (same);

2  *Warner Chilcott Laboratories Ireland Ltd. v. Impax Laboratories, Inc.*, 2009 WL 3627947, 3

3  (D.N.J. 2009) ("[R]estrictions on access to confidential documents or the activities of counsel

4  will not be imposed absent some specific, identifiable showing and not on the basis of broad

5  generalizations of potential harm.  The notion that good cause can be shown simply by invoking

6  the possibility of inadvertent disclosure has been rejected . . .").  Absent evidence that AST's

7  experts will ignore the protective order (as negotiated by the parties), the Court should assume

8  that the existing protective order will be strictly followed and that qualified individuals receiving

9  information subject to the protective order will refrain from misusing confidential and

10 proprietary information.  *Id.*

11      Here, the potential threat of inadvertent disclosure by AST's experts is non-existent.  The

12 experts have been provided confidential information with the understanding that it is subject to a

13 protective order.  Defendants provide no evidence that AST's experts will disclose (or have

14 threatened to disclose) Defendants' proprietary information contrary to the terms of the

15 protective order.  Where a moving party fails to provide evidence supporting a showing the need

16 for a terms of a protective order, courts have held that the protection is unwarranted.  *Pfizer Inc.*

17 *v. Apotex Inc.*, 2010 WL 3937916, 5 (N.D.Ill., 2010) ("As a result [of the moving party's failure

18 to provide specific evidence relating to potential risks of disclosure], the Court has no

19 evidentiary basis to determine what relations Apotex's attorneys have with their client, what the

20 scope of their representation of Apotex is, who they advise or consult with in the company, or

21 any other ground by which the Court could gauge the risk of inadvertent disclosure of

22 confidential information.  Without such evidence, a party has not shown why a court should

23 impose a bar on opposing counsel's activities.").

24      Moreover, the proposed prosecution bar provides no real protection beyond what the

25 protective order already provides.  The parties' experts are not precluded from teaching in the

26 field of satellite communications; they are not precluded from researching in the field of satellite

27 communications; they are not precluded from developing products in the field of satellite

28 communications; and they are not precluded from working for companies in the satellite

1   communications industry.  In recognizing that the above activities are not precluded, the entry of

2   a prosecution bar provides no additional protection from any perceived potential risk of

3   inadvertent disclosure.  The parties' experts have been entrusted the parties' confidential and

4   proprietary information with the understanding that they will not use the information outside of

5   this litigation.  A prosecution bar only provides a condition upon which experts will be

6   discouraged from working on this case.  Such a potential restriction has already precluded AST

7   from engaging several expert witnesses, who were unable to participate in this litigation with the

8   prospect of the prosecution bar proposed by Defendants.  See Declaration of Brett M. Hager in

9   Support of AST And Comtech's Response to Motion for Protective Order ("Hager Decl."), filed

10  herewith.  As explained below, AST should not be handicapped by being prevented from hiring

11  certain experts based on this overly broad prosecution bar.

12  **II.      EVEN IF THERE IS A RISK OF INADVERTENT DISCLOSURE, THE**
13  **POTENTIAL HARM RESULTING FROM A PROSECUTION BAR MUST BE
    PROPERLY WEIGHED.**

14          Even if a risk of inadvertent disclosures exists, the inquiry does not end there.  The Court

15  must balance the risk of inadvertent disclosure against the potential harm to the opposing party

16  resulting from the restrictions imposed on that party's right to have the benefit of counsel (and

17  experts) of its choice.  *Deutsche Bank*, 605 F.3d at 1380.  In making this determination, the court

18  should consider:  (1) the extent and duration of counsel's past history in representing the client

19  before the PTO; (2) the degree of the client's reliance and dependence on that past history; and

20  (3) the potential difficulty the client might face if forced to rely on other counsel or experts for

21  the pending litigation or engage other counsel or experts to represent it before the PTO.

22          Here, Defendants performed no analysis of each of the relevant individuals regarding any

23  work to assist AST or Comtech in connection with the PTO.  Defendants have certainly

24  performed no analysis as to the parties' experts in this regard.  Even if Defendants were able to

25  identify some tangible risk of inadvertent disclosure (which they have not), the harm to AST

26  outweighs any potential benefit from a potential prosecution bar.  As stated above, several of

27  AST's potential experts declined to participate in this case based solely on the prosecution bar

28  proposed by Defendants.  *See* Hager Decl.

1   As stated in *Deutsche Bank*, a party should be free to choose litigation counsel and

2   prosecution counsel without fear that counsel will be disqualified based on a prosecution bar.

3   605 F.3d at 1380-81.  The same rationale holds true for a party's potential experts that will assist

4   in representation.  Other cases highlight the importance of a party's freedom to select experts of

5   its choice.  *Nellson Northern Operating, Inc. v. Elan Nutrition, LLC*, 238 F.R.D. 544, 546-547

6   (D. Vt. 2006) (risk of inadvertent disclosure by party's expert was minimal due to the expert's

7   agreement protective order; potential risk outweighed by parties' strong interest in ability to

8   freely choose expert); *Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 250 F.R.D. 426, 428

9   (D. Neb. 2008) (same).

10   The accompanying Hager Declaration clearly shows the injury to AST from the proposed

11   prosecution bar.  Specifically, AST was unable to retain certain experts for this case.  While this

12   is a past harm, the entry of the bar will continue to harm AST by limiting its choice of potential

13   experts in the future.  Moreover, this potential harm substantially outweighs any potential "risk"

14   set forth by Defendants.  In fact, Defendants have been unable to articulate any tangible, present,

15   or actual risk if a prosecution bar is not made part of the proposed protective order.

16   **III.   THE AUTHORITY CITED BY DEFENDANTS IN FAVOR OF A PROSEUCTION**
17   **BAR THAT INCLUDES EXPERTS DOES NOT SUPPORT A FINDING THAT**
    **THE PROPOSED PROSECUTION BAR IN THIS CASE IS APPROPRIATE.**

18   Defendants rely on several opinions in arguing the need for a prosecution bar that

19   encompasses experts in this case.  The cases cited, however, do not support Defendants' position.

20   Defendants' cite *Wi-Lan v. Acer, et al.* for the proposition that courts have previously entered

21   prosecution bars that include experts.  2009 WL 1766143, *1 (E.D. Tex. June 23, 2009).

22   Defendants' reliance of the *Wi-Lan* case is misguided for two reasons.  First, the protective order

23   in *Wi-Lan* incorporated a prosecution bar that was agreed to by both parties.  *Id.*  The only issue

24   in *Wi-Lan* was whether a second category of discovery bar should apply to employees, in

25   addition to counsel and experts.  *Id.*  The parties in *Wi-Lan* had already agreed that a prosecution

26   bar should apply to experts.  *Id.*  Certainly, in appropriate circumstances, if the parties believe a

27   prosecution bar is necessary and appropriate (without the risk of unduly prejudicing either

28   litigant), the parties have the ability to stipulate to those terms.  That is not the case here.  AST

1    and the Defendants disagree on the need for a prosecution bar that is applicable to the parties'

2    experts and whether any potential risk of inadvertent disclosure is outweighed by the resulting

3    harm from such a prosecution bar.  Second, *Wi-Lan* does not set forth any other legal standard

4    different from the one articulated in *Deutsche Bank*.  Rather, the *Wi-Lan* court performed the

5    same person-by-person, fact-intensive inquiry regarding whether a heightened discovery bar

6    should be implemented.  *Id.* at *2.  Following the applicable legal standard, *Wi-Lan* declined to

7    incorporate an "Employee Bar" into the parties' protective order because the moving party did

8    not meet its burden to show good cause for the additional discovery restriction.  *Id.* at *5.

9         Similarly, Defendants cite *Northbrook Digital, LLC v. Vendio Services, Inc.* to show that

10   courts have previously incorporated prosecution bars that include experts.  625 F.Supp.2d 728,

11   743 (D. Minn. 2008).  Again, Defendants miss the point.  AST does not dispute that ***in the***

12   ***appropriate circumstances*** experts may be subject to a prosecution bar.  But, those appropriate

13   circumstances do not exist here.  The facts of *Northbrook* were very different than this case.

14   *Northbrook* involved an inventor who was a patent prosecutor, a litigation attorney – and the

15   owner of the entity that initiated the patent case that gave rise to the *Northbrook* decision.  *Id.* at

16   731-32.  The inventor in *Northbrook* acted as his own expert.  *Id.*  Thus, there was no distinction

17   between the party and its expert witness:  they were one and the same.  The *Northbrook* court

18   recognized that the plaintiff was a "one-man operation," wearing many hats.  *Id.*  Thus,

19   *Northbrook* found that a prosecution bar extending to the parties and their experts was

20   appropriate acceptable (because they were the same person).  *Id.* at 731-32, 767.

21        Defendants' cases do not impact the scope of the prosecution bar in this case.  Rather,

22   they further counsel the need for a fact-driven inquiry before adopting such a bar.  In this case,

23   Defendants have failed to articulate any risk of inadvertent disclosure by the parties' experts, and

24   have wholly failed to meet their burden to show good cause for such a prosecution bar.

25   **IV.    IF THE COURT INCLUDES A PROSECUTION BAR IN THE PROTECTIVE**
     **ORDER, IT SHOULD BE NARROWLY TAILORED TO THE SCOPE OF THE**
26   **TECHNOLOGY IN THIS CASE.**

27        If Defendants can somehow show good cause for the inclusion of a prosecution bar that

28   includes AST's experts, the bar should be appropriately narrow, and should cover only the

1    technology currently in dispute.  As set forth in their motion, Defendants argue that the

2    prosecution bar should apply to any "self-interference cancellation" technology.  This is too

3    broad.  If a prosecution bar is entered, it should cover "self-interference cancellation technology

4    for shared-channel satellite communications."

5          In arguing that "self-interference cancellation" is a proper scope for a prosecution bar,

6    Defendants cite to the text of the patents themselves.  While it is true that the patents **may** have

7    applications outside of satellite communications, none of the parties currently has any such

8    products.  In fact, Defendants concede this point.  *See* Motion at p. 9 ("While ***ViaSat's and***

9    ***Paradise's accused products are currently implemented only as shared-channel satellite***

10   ***applications***, the underlying PCMA technology which is at issue can be applied to other fields.")

11   Inherent in Defendants' argument is a concession that Defendants do not have any products that

12   relate to non-satellite communication.  Again, Defendants fail to articulate any specific tangible

13   risk of inadvertent disclosure outside of satellite communication technology.  Instead,

14   Defendants again assert that there is some nebulous potential risk to other unknown products that

15   might (or might not) be developed at some time in the future.  Such a non-specific risk is not

16   sufficient to support the entry of such a broad prosecution bar.  *Eli Lilly and Co. v. Actavis*

17   *Elizabeth LLC*, 2008 WL 2783345, 2 (D.N.J. 2008) (rejecting prosecution bar over broad

18   category of technology rather than narrower bar covering technology actually at issue in case;

19   "Defendants' […] have not provided the Court with any reason to believe Lilly's in-house

20   counsel will, intentionally or otherwise, disclose or rely on confidential information in any future

21   activities.  As such, they have failed to show good cause.").  If any prosecution bar is entered,

22   AST urges the Court to enter a properly narrow bar:  self-interference cancellation technology

23   for shared-channel satellite communications.

24                                    **Conclusion**

25         For the reasons stated above, Defendants have failed to justify entry of a prosecution bar

26   that extends to the parties' experts.  Such a bar has hindered (and will continue to hinder) AST's

27

28

1    ability to retain experts for this case.  If the Court enters a prosecution bar, it should be apply

2    only to the scope of technology at dispute in this case.

3

4    Date:  November 18, 2010                    Respectfully submitted,

5                                                AGILITY IP LAW

6

7                                                By:  /s/ James C. Otteson_____
                                                      James C. Otteson
8

9                                                SANDERS & PARKS P.C.
                                                 Rick N. Bryson
10                                               Michelle Breit
                                                 Brett M. Hager
11                                               Benjamin Erlick

12                                               Attorneys for Plaintiff
                                                 APPLIED SIGNAL TECHNOLOGY, INC.
13                                               And Third-Party Counterclaim Defendant
                                                 COMTECH EF DATA CORPORATION
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28