Frank E. Scherkenbach (SBN 142549), scherkenbach@fr.com
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02110-1878
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Christopher S. Marchese (SBN 170239), marchese@fr.com
Seth M. Sproul (SBN 217711), sproul@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA  92130
Telephone:  (858) 678-5070
Facsimile:  (858) 678-5099

Erin E. Kaiser (SBN 259926), kaiser@fr.com
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071

Attorneys for Defendants, Counterclaimants and Third-Party Plaintiff
ViaSat, Inc. and Paradise Datacom, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| APPLIED SIGNAL TECHNOLOGY, INC.<br><br>        Plaintiff,<br><br>v.<br><br>EMERGING MARKETS COMMUNICATIONS, INC.; EMC SATCOM TECHNOLOGIES, INC.; PARADISE DATACOM, LLC; and VIASAT, INC.,<br><br>        Defendants,<br><br>AND RELATED CLAIMS. | Case No. 09-CV-02180-SBA (DMR)<br><br>**REPLY MEMORADUM IN SUPPORT OF VIASAT, INC. AND PARADISE DATACOM, LLC'S MOTION FOR PROTECTIVE ORDER**<br><br>Date:   January 13, 2011<br>Time:   11:00 a.m.<br>Place:   Courtroom 4, 3rd Floor<br>Judge:  Magistrate Judge Donna Ryu |

# I.    INTRODUCTION

AST[1] admits that a prosecution bar is needed in this case but attempts to create a blanket exemption from this bar for ***all experts***—regardless of who those experts are, what they do, or with what companies they are affiliated.   Such a wholesale exemption of unknown individuals is contrary to logic, case law, and this District's model "Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets" provided by this District ("Model Patent Protective Order"), which provides that "***any individual*** who receives access to 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' ... information shall not be involved in the prosecution of patents or patent applications…" [Ex. 1 (emphasis added).] [2]

Furthermore, AST's opposition is premised on an incorrect view of the parties' respective burdens of proof.  AST contends that ViaSat has "not shown any risk of inadvertent disclosure on behalf of AST's experts, and [has] failed to balance the potential harm to AST against these 'potential' risks."  [AST Opp. at 1.]   However, according to the Federal Circuit, ViaSat must satisfy only the "threshold inquiry" that there is good cause for issuing a prosecution bar.  *In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).  The burden then shifts to ***AST*** to demonstrate, on an individual-by-individual basis, why each of its experts should be exempt:

> ***[A] party seeking imposition of a patent prosecution bar*** must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information. We further hold that ***the party seeking an exemption from a patent prosecution bar*** must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertence use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party cause by such inadvertent use.

*Id* (emphasis added).

ViaSat has carried its burden and shown that a prosecution bar is justified.  [*See* D.I. 178.]

---

[1] For convenience, ViaSat, Inc. and Paradise Datacom LLC will be referred to collectively as "ViaSat," and AST and Comtech EF Data Corp. as "AST."
[2] Exhibits are to the Declaration of Seth Sproul, filed concurrently herewith.

REPLY MEMO ISO VIASAT & PARADISE
DATACOM'S MOTION FOR P.O.
Case No. 09-CV-02180-SBA (DMR)

Confidential information is at stake in this case.  ViaSat has produced its source code and many other highly sensitive technical documents for the accused products, and AST's experts have already had access to and reviewed at least some of these documents.  Indeed, AST does not dispute that ViaSat has carried this burden—AST agrees on the *imposition* of a prosecution bar, and merely disputes its applicability to experts and its breadth.

On the other hand, AST has failed to carry its burden of proving the two *Deutsche Bank* factors above, namely, that (1) there is no risk of inadvertent disclosure by a competitive decisionmaker, and (2) the harm to AST outweighs the risk to ViaSat.  Indeed, AST has made no discernable effort to demonstrate that each of its experts deserves an exclusion from the prosecution bar, but rather complains that it will be deprived of its choice of experts.  However, AST has already found and retained, not one, but *two experts* who have *agreed to be bound by the prosecution bar*.  Moreover, AST's inability to retain other experts because it refuses to agree to the prosecution bar proves that their retention presents a risk to ViaSat—if those potential experts object to the prosecution bar, then they expect to work (or are working) on patent applications related to ViaSat's accused technology, and there is thus a risk of inadvertent disclosure or use of ViaSat's confidential information in those patent applications.

AST's second complaint about the prosecution bar—that it should be limited to *shared channel* self-interference cancellation for *satellites*—is equally unfounded.  It is undisputed that the accused ViaSat technology can be used in more than just shared channel applications or satellite systems.   The prosecution bar should not be narrower than the scope of the very technology at issue in the case.

Thus, ViaSat requests that the Court enter its Proposed Protective Order, including the proposed prosecution bar, attached as Exhibit A to ViaSat's Motion.  [D.I. 180-1.]

## II.   ARGUMENT

### A.   There Is Good Cause for Issuance of ViaSat's Prosecution Bar

#### 1.   The Federal Circuit's "Threshold Inquiry" Is Satisfied

To meet the threshold inquiry, ViaSat must "show that [1] the information designated to trigger the bar, [2] the scope of activities prohibited by the bar, [3] the duration of the bar, and [4]

REPLY MEMO ISO VIASAT & PARADISE
DATACOM'S MOTION FOR P.O.
Case No. 09-CV-02180-SBA (DMR)

1   the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of

2   proprietary competitive information." *Deutsche Bank*, 605 F.3d at 1381.

3        First, there is no dispute that AST's Experts will have access to the type of information that

4   triggers the prosecution bar in this case:  information relevant to the preparation and prosecution of

5   patent applications before the PTO.[3]   The experts in this case have access to all Highly

6   Confidential documents produced, including extremely sensitive technical documents, design

7   materials, and source code.  There is no limit to the scope of documents they can and will be

8   expected to review.  Indeed, one of the experts that AST has already retained, Dr. Kiaei, who has

9   agreed to be bound by the prosecution bar, spent several days inspecting ViaSat's source code.

10       Second, the scope of the activities prohibited by ViaSat's proposed prosecution bar

11  properly reflects the risk presented by the disclosure of ViaSat's confidential information. AST

12  admits that the prosecution bar does ***not*** preclude a number of activities, including teaching,

13  developing products, and working for companies in the field of satellite communications.  [D.I.

14  194 at 4-5.]  AST misses the point when it argues that this means the "prosecution bar provides no

15  additional protection from any perceived potential risk of inadvertent disclosure."  [*Id.*]  Instead,

16  this reinforces that the prosecution bar is narrowly tailored to prevent only those activities that

17  might lead to inadvertent disclosure in a ***patent***.  Specifically, the risk is that lawyers or experts

18  will review confidential material pertaining to self-interference cancellation and then later

19  inadvertently use the knowledge gained from this confidential material in the prosecution of future

20  patents or patent applications.  A subsequently issued patent could then be asserted against others,

21  including ViaSat—is more harmful than inadvertent use of the material in a lecture, or even in

22  product development.  The prosecution bar thus restricts such individuals from being "involved in

23  the prosecution or preparation of any patent applications relating to self-interference cancellation."

24  [D.I. 180-1 (ViaSat's Proposed Protective Order at 17).]

25       Third, the duration of ViaSat's prosecution bar is reasonably tailored to reflect the risk

26  presented by potential disclosure.  ViaSat is requesting a prosecution bar lasting only two years

27  _____

28  [3] The only type of information that may fall outside of this range as identified by the Federal
    Circuit are financial and business data.  *Id*.  That information is not at issue here.

after final disposition of this action, a proposal that is consistent with that of this District's Model Patent Protective Order. [Ex. 1.] *AST does not challenge the duration of the prosecution bar*.

Fourth, the subject matter covered by ViaSat's prosecution bar reasonably reflects the risk of inadvertent disclosure. As explained in detail in ViaSat's Motion, the scope of ViaSat's proposed ban is consistent with the subject matter of the patents-in-suit, the subject matter of the technology at issue, and the purpose behind protective orders. [*See* D.I. 178.] Despite this consistency, AST argues that the bar should be narrowed because the accused products currently are implemented only as shared-channel satellite applications. However, the relevant question here is not to what field the accused products are limited, but instead in what fields the patented technology can be used—*i.e.*, the technology areas where there is risk that lawyers or experts will inadvertently exploit their new knowledge in future patent prosecution. ViaSat's Motion and the Declaration of Donald Becker in support thereof explain that ViaSat's confidential material can be used broadly in self-interference cancellation, and thus there is risk that this material can be inadvertently and inappropriately used in patenting an invention unrelated to shared-channel satellite applications. [*Id*; D.I. 179 (Decl. of Donald Becker)]. Accordingly, the prosecution bar should properly reflect this broad scope.

### 2.   ViaSat Need Only Establish *Risk* of Inadvertent Disclosure, Not Actual Inadvertent Disclosure, as AST Argues

By satisfying the four considerations above, ViaSat meets the threshold inquiry and thus its burden of proof. AST, however, tries to raise this burden by apparently requiring actual "evidence that AST's expert will ignore the protective order." [D.I. 194 at 4 (AST's Response).] AST provides no legal support for this position.[4] [*Id*.] In fact, this directly contradicts what courts have consistently held. *See Deutsche Bank*, 605 F.3d at 1378 (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467 (Fed. Cir. 1984) ("[T]he information at issue was 'extremely potent'

---

[4] AST makes various assertions that ViaSat must show "true," "substantial," "substantiated," and "specific" risk of inadvertent disclosure. [*See, e.g.,* D.I. 194 at 1, 2, and 3] However, in each instance, while AST may generally attribute these naked statements to *Deutsche Bank*, it tellingly fails to cite any specific support or pin cite. [*Id*.] Similarly, AST further contends that "'potential' or 'threatened' breaches of the protective order" are insufficient, but AST cites only unpublished opinions from other district courts to support this statement. [*Id*. at 3-4.] These opinions run counter to the threshold inquiry set out in *Deutsche Bank*.

REPLY MEMO ISO VIASAT & PARADISE
DATACOM'S MOTION FOR P.O.
Case No. 09-CV-02180-SBA (DMR)

1  confidential information and of such a nature that it would be 'humanly impossible' to control its

2  inadvertent disclosure.")); *MercExchange, L.L.C. v. eBay, Inc*., 467 F.Supp.2d 608, 623 (E.D. Va.

3  2006) ("[I]t is oftentimes impossible for an individual, even with the noblest of intentions, to

4  delineate between ideas that they may advance as a result of their own creation, and those

5  influenced by past exposure to confidential information").

6      Furthermore, under AST's theory, prosecution bars would only be entered if there was

7  proof that an inadvertent disclosure *already* took place or if a lawyer or expert actually *admitted*

8  that he or she planned to impermissibly use confidential information. To require a party to wait for

9  either of these events not only goes against the purpose of the protective order, it contradicts the

10  very language of this test—courts explicitly look for "risk of inadvertent disclosure" as opposed to

11  "proof of inadvertent disclosure."  Thus, the standard of proof advocated by AST is incorrect.

12      As explained above and in ViaSat's Motion, there is in fact "substantiated" risk of

13  inadvertent disclosure of ViaSat's confidential materials.  ViaSat's proposed protective order is

14  properly drafted to protect against this.

### B.    Experts Should Not be Exempt from the Prosecution Bar

16      AST's opposition goes on to make the assertion that its *technical* experts—who have

17  already accessed ViaSat's confidential information—should be exempt from the prosecution bar.

18  This is legally unsupportable.

19      As an initial matter, AST's analysis is facially deficient because it is not done on an

20  individual-by-individual basis, as required.  *See Deutsche Bank*, 605 F.3d at 1381 ("These factors

21  [considered for the threshold inquiry] should also be taken into account when balancing the

22  conflicting interests in determining whether a *particular individual may be properly exempt from

23  the bar*.") (emphasis added).  Here, AST asks the Court to issue a blanket exemption for

24  hypothetical, future experts—not a particular individual.  This request is improper for many

25  reasons, one of which is that AST already has two experts who have agreed to the prosecution bar,

26  so any harm is not only hypothetical, but has already been negated.  Indeed, one of those experts

27  has already spent days reviewing ViaSat's source code, and the other expert submitted two reports

28  and gave a deposition for claim construction.  Furthermore, without identifying particular

REPLY MEMO ISO VIASAT & PARADISE
DATACOM'S MOTION FOR P.O.
Case No. 09-CV-02180-SBA (DMR)

individuals, it is impossible to perform the necessary analysis to determine exemption.  *See id.* at 1380 ("It is therefore important for a court, in assessing the propriety of an exemption from a patent prosecution bar, to examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a ***counsel-by-counsel basis***.") (emphasis added).   Additionally, as explained below, AST fails to prove the factors of the two-part test outlined in *Deutsche Bank*.

### 1. Experts' Involvement in Prosecution of Related Patents Gives Rise to Risk of Inadvertent Disclosure

AST argues that, to be bound by the prosecution bar, the individual must be involved in competitive decisionmaking of "the party itself."  [D.I. 194 at 3.]   However, the competitive-decisionmaker inquiry should not be limited to decisionmakers of only AST and Comtech, particularly when applied to experts.  The Court should instead inquire whether the expert is a competitive decisionmaker for any entity that files patents for which the expert is involved, including AST, other competitors of ViaSat, the expert's own company, and companies with which he consults.  As ViaSat explained in its Motion, AST's current experts have several of their own patents and presumably will file additional applications in the future.  [D.I. 178 at 4; D.I. 180-9 (Heppe *curriculum vitae*); D.I. 180-10 (Kiaei *curriculum vitae*).]   The same is true for Dr. Rappaport.  [Ex. 2].  With respect to their own patents, experts certainly engage in the competitive decisionmaking activities outlined by *Deutsche Bank*, such as obtaining disclosure materials, investigating prior art, making strategic decisions regarding claim scope, writing and/or reviewing applications, and amending or surrendering claim scope during prosecution.  *Deutsche Bank*, 605 F.3d at 1380.  Clearly, the inventor himself "has occasion to shape the content of the patent" and "influence the direction of prosecution."  *Id*.  Similarly, an expert often has the opportunity to influence decisionmaking when consulting for competitor companies by, for example, investigating prior art and reviewing applications.  *Id.*

Moreover, even under AST's interpretation that the expert must be a competitive decisionmaker for AST or Comtech—which, for experts, is too narrow and thus incorrect—there is still no basis for exempting ***all experts***.  Some of the experts falling into AST's proposed blanket exemption may indeed be competitive decisionmakers for AST and/or Comtech.  AST's position

REPLY MEMO ISO VIASAT & PARADISE
DATACOM'S MOTION FOR P.O.
Case No. 09-CV-02180-SBA (DMR)

would allow such experts access to ViaSat's confidential documentation.

AST provides no legitimate explanation as to why an expert should be precluded from the prosecution bar while attorneys should not.  While the Federal Circuit's analysis in *Deutsche Bank* focuses on attorneys, it makes no statements that prosecution bars in general should not apply to experts.  In fact, the protective order at issue in that case provided that "*[n]o individual* that receives information designated 'CONFIDENTIAL-PATENT PROSECUTION BAR' shall give advice or participate, supervise or assist in the prosecution of patents…"  *Id.* at 1376 (emphasis added).  The Federal Circuit made no mention of narrowing the scope of this prosecution bars—or any other prosecution bar—to attorneys only.  Furthermore, this District's Model Patent Protective Order likewise provides that "*any individual* who receives access to 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' … information shall not be involved in the prosecution of patents or patent applications…"  [Ex. 1 (emphasis added).]

Contrary to AST's assertion, some courts have found that the risk of inadvertent disclosure may be even greater for experts:

> But once an expert has digested this confidential information, it is unlikely that the expert will forget. The expert's *raison d'etre* is to assimilate information in his or her chosen field and formulate that material into various theories. The information obtained from Bay will be added to the expert's repository of other in-formation for possible future use. Even with stern sanctions for unauthorized disclosure, how does one practically police a protective order? If the expert is called upon two years after this litigation to assist a potential competitor in structuring its business, will he really be able to compartmentalize all he or she has learned and not use any of the information obtained from Bay?

*Litton Industries, Inc. v. Chesapeake & Ohio Railway Co*., 129 F.R.D. 528, 531 (E.D. Wis. 1990); *see also In re Worlds of Wonder Sec. Lit.,* 147 F.R.D. 214, 216-17 (N.D. Cal. 1992) (noting that it would be "naïve" to think that expert witnesses who would "most likely" be competitors of the party opposing disclosure would be able to "erase" from their minds the at-issue documents that revealed confidential, internal details of how that party conducts its business); *Vasudevan Software, Inc. v. IBM Corp*, 2010 U.S. Dist. LEXIS 100835 (N.D. Cal. September 14, 2010) (unpublished) (citing *Worlds of Wonder* in evaluating exemption from a prosecution bar); *see also MercExchange,* 467 F.Supp.2d at 623 ("[T]he cited cases involve barring *lawyers* from

REPLY MEMO ISO VIASAT & PARADISE
DATACOM'S MOTION FOR P.O.
Case No. 09-CV-02180-SBA (DMR)

involvement in patent prosecution, not *experts*, and not only must a court presume a heightened level of ethical conduct on the part of lawyers as compared to experts, but also, requiring a party to replace counsel they have a longstanding relationship with creates a much greater burden than requiring a party to hire different experts.") (emphasis in original).

In fact, if potential AST experts refuse to be bound by the prosecution bar, that fact alone demonstrates there is an actual risk to ViaSat.  For example, AST reports that Dr. Rappaport declined to be an expert because "his ongoing responsibilities to the University of Texas would be compromised if he were precluded from prosecution of any patents relating to self-interference cancellation technology."  [D.I. 194-1 at ¶ 5 (Decl. of Brett M. Hager).]  Clearly, this demonstrates that Dr. Rappaport anticipates at least the possibility that he will be involved in the prosecution of patents related to self-interference technology.  In this instance, the prosecution bar (or threat of it) worked exactly as it should, by preventing a third party who would admittedly be working as a competitive decisionmaker in the same field from accessing ViaSat's confidential information.

## 2.    The Risk of Inadvertent Disclosure Is Not Outweighed by Potential Harm to AST

AST again tries to argue that it is ViaSat who failed to balance the risk of inadvertent disclosure against potential harm to AST.  However, as established above, this analysis is not part of the threshold inquiry that ViaSat must show, but is instead implicated by AST as it seeks an exemption.  *Deutsche,* 605 F.3d at 1381.  AST has not—and cannot—prove that any harm it may face as a result of including experts in the prosecution bar outweighs the harm to ViaSat as a result of inadvertent disclosure.

As stated above, AST already has two retained technical experts in this case who have agreed to the prosecution bar, who have examined ViaSat source code and other confidential documents, and who have put forward expert reports and been deposed.  Thus AST's complaint about its inability to retain experts is moot—AST already has its experts.

It is clear, even when analyzing AST's hypothetical or "unretained" experts, that it suffers no harm.  As AST points out, the Federal Circuit in *Deutsche Bank* lists considerations such as (1) extent and duration of past history with client, (2) degree of client's reliance on past history, and

(3) difficulty of having to rely on a replacement when analyzing potential harm. *Id*. AST makes no effort to perform this analysis. Regardless, it is clear that none of these considerations weighs in favor of AST's argument. For the first two considerations, there is no indication that AST or Comtech have previous relationships with any of these "unretained" experts that AST mentions. For example, according to Dr. Rappaport's curriculum vitae, attached herein as Exhibit 2, he has no past history with either AST or Comtech. For the third consideration, AST clearly has had no trouble replacing Dr. Rappaport, as it already has two experts—Dr. Heppe and Dr. Kiaei—who have agreed to be bound by ViaSat's prosecution bar. AST has already used these experts extensively and is proceeding with its case using these experts.

AST grasps onto this third consideration by emphasizing "the importance of party's freedom to select experts of its choice." [D.I. 194 at 6.] However, AST has already chosen experts who have no issue with the prosecution bar. Thus, given that AST is talking about experts it will not use in this case, this discussion is purely academic.

Furthermore, in making this argument, AST misapplies two non-controlling district court cases, both of which are factually distinguishable from the present situation. [D.I. 194 at 6.] First, AST cites *Nellson Northern Operating, Inc. v. Elan Nutrition*, 238 F.R.D. 544 (D. Vt. 2006). Contrary to AST's argument, the district court in that case found the risk of inadvertent disclosure to be limited because the expert was "primarily a stay-at-home parent at this time, and her consulting work with [a competitor] has been and will likely continue to be relatively limited." *Id*. at 547. The court also based its finding on the fact that the expert was not "given broad or unfettered access to Nellson's files. Rather she will view only [a] closed set of materials, limiting her exposure to Nellson's confidential information and greatly reducing the likelihood of an inadvertent disclosure." *Id*. Moreover, in that case, the expert's experience had a "unique relevance" to the case and thus other experts were not as qualified. *Id*. at 547. Second, in *Streck Inc. v. Research & Diagnostics Systems, Inc*., 250 F.R.D. 426, 430 (D. Neb. 2008), the district court found that the expert's consulting involved a different topic area than the patents-in-suit and thus, again, the risk of inadvertent disclosure was limited.

REPLY MEMO ISO VIASAT & PARADISE
DATACOM'S MOTION FOR P.O.
Case No. 09-CV-02180-SBA (DMR)

1   In any event, courts have found that the ability to choose an expert is not enough to

2   outweigh the risk of inadvertent disclosure by that expert, particularly without showing that the

3   expert is specifically qualified above other potential experts.   In *BASF Corp. v. U.S.*, 321

4   F.Supp.2d 1373, 1380-81 (C.I.T. 2004), the court recognized this balance:

> Defendant has not demonstrated that its interest in using Dr. Larkin as its third-party consultant outweighs the injury that BASF would likely suffer as a result of this disclosure. Defendant has not specified with particularity why Dr. Larkin's expertise is critical for conducting its defense. Although Dr. Larkin has thirty years of extensive experience in the fuel additive industry, it is not apparent that he possesses qualifications to be an expert witness in this case which other experts may not possess.

10  *Id* (omitting internal citations).  AST has retained two experts that it has already used extensively

11  in this case and has proffered one of them, Dr. Heppe, as a qualified expert for claim construction.

12  AST has not established why Dr. Rappaport or any other expert is more desirable than the

13  experts currently retained by AST.   In fact, AST has not even stated that it wants to hire Dr.

14  Rappaport or anyone other than Dr. Heppe or Dr. Kiaei.  Instead, AST apparently only contends

15  that it wants the right to choose.  This is insufficient to outweigh the harm to ViaSat as a result of

16  inadvertent disclosure.

17  **II.   CONCLUSION**

18  Because ViaSat has demonstrated good cause for issuance of its prosecution bar and

19  because AST has not met its burden to show with specificity that its experts should be excluded

20  from the prosecution bar, the Court should put in place the Protective Order with ViaSat's

21  proposed protective order.

22  Dated:  November 30, 2010            FISH & RICHARDSON P.C.

23

24                          By:   */s/ Seth M. Sproul* _____
                                  Seth M. Sproul (SBN 217711)
25                                sproul@fr.com

26                          Attorneys for Defendants, Counterclaimants and
                            Third-Party Plaintiff ViaSat, Inc. and Paradise
27                          Datacom, LLC

28  11116387.doc

REPLY MEMO ISO VIASAT & PARADISE
DATACOM'S MOTION FOR P.O.
Case No. 09-CV-02180-SBA (DMR)