UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED SIGNAL TECHNOLOGY, INC., | No. C-09-02180 SBA (DMR) |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS VIASAT, INC. AND PARADISE DATACOM LLC'S MOTION FOR PROTECTIVE ORDER** |
| v. | |
| EMERGING MARKETS COMMUNICATIONS, INC., et al., | |
| Defendants. | |

Currently before the Court is Defendants Viasat, Inc. and Paradise Datacom LLC's ("Defendants") Motion for Entry of Protective Order. *See* Docket No. 148. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel at the January 13, 2011 hearing and all other evidence of record, the Court hereby GRANTS Defendants' Motion for Entry of Protective Order.

**I. Discussion**

This matter involves allegations of patent infringement between competing satellite communications companies, all of which hold some interest in patents they claim are infringed upon by their competitors' technology. The current discovery dispute arose when the parties could not reach agreement on a particular term of a contemplated protective order, intended to protect each

party's confidential information. Specifically, the parties have agreed to include a patent prosecution bar in the protective order, but disagree on certain aspects of the bar. In particular, the parties disagree on (1) the subject matter of the patent prosecution bar; specifically, the bar should apply to patents that relate to "self-interference cancellation technology" or, more narrowly, to "self interference cancellation technology for shared-channel, satellite communications"; and (2) whether expert witnesses who view Defendants' confidential technical information should be subject to the bar.

Defendants argue that the application of the proposed prosecution bar to *all* individuals who view their confidential technical information, including expert witnesses, as well as the bar's application to patents that relate to the general category of "self-interference cancellation technology" is necessary to protect all possible applications of its confidential technology. Plaintiff Applied Signal Technology, Inc. ("AST") and third party defendant Comtech argue that Defendants' proposed prosecution bar is overly broad in its subject matter coverage and that its application to expert witnesses is not justified, as Defendants have not shown any risk of inadvertent disclosure of confidential information by experts that justifies the application of a prosecution bar to them.

### A.   Reasonableness of the Proposed Prosecution Bar

Despite provisions in protective orders that specify that information designated as confidential may be used only for purposes of the current litigation, courts recognize that "there may be circumstances in which even the most rigorous efforts of the recipient of such [sensitive] information to preserve confidentiality in compliance...with a protective order may not prevent inadvertent compromise." *In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). Accordingly, courts authorize the inclusion of prosecution bars in protective orders as a less drastic alternative to the disqualification of counsel or experts. *See e.g. Cummins-Alison Corp. v. Glory Ltd.*, 2003 U.S. Dist. LEXIS 23653, at *29-30 (E.D. Ill. 2003). "The determination of whether a protective order should include a patent prosecution bar is a matter governed by Federal Circuit law," and a party seeking to include a prosecution bar in a protective order carries the burden of showing good cause for its inclusion. *Deutsche Bank*, 605 F.3d at 1378.

Under *Deutsche Bank*, which represents the controlling law in this dispute, Defendants, as the moving party, bear the burden of showing as a threshold matter that the proposed prosecution bar "reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information." *Id*. at 1381. This threshold inquiry essentially measures whether a prosecution bar is reasonable: that is, that "the information designed to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id*. If the moving party meets this threshold requirement, the court must then weigh the risk of inadvertent disclosure by individuals involved in competitive decisionmaking against the potential injury to the party deprived of its counsel of choice. *Id*. Although the parties are in agreement regarding the necessity of including a prosecution bar in the protective order, they do not agree on the subject matter covered by the bar, which is the final element of the threshold inquiry. Given that the purpose of this initial inquiry is to measure whether the bar as a whole "reasonably reflects the risk" of disclosure of confidential information, the Court will therefore analyze all of the elements of the threshold inquiry to determine the proper scope of the bar.

Here, Defendants have met their burden with respect to the first three elements of the threshold inquiry, which are not disputed by Plaintiffs. First, the information designated to trigger the bar must be relevant to the preparation and prosecution of patent applications. *Deutsche Bank*, 605 F.3d at 1381. Here, the information that will trigger the bar is "commercially sensitive technical information" designed as "Confidential," "Highly Confidential - Attorneys' Eyes Only," or "Highly Confidential - Source Code." *See* Docket No. 178-1 at 17 (Defendants' Proposed Protective Order). In contrast with financial data or business information, confidential technical information, including source code, is clearly relevant to a patent application and thus may pose a heightened risk of inadvertent disclosure. *See Deutsche Bank*, 605 F.3d at 1381. Further, the scope of the activities prohibited by the bar - patent prosecution[1] - is appropriately narrow. The prosecution bar at issue

---

[1] The term "prosecution" in the proposed prosecution bar specifies that the term "includes directly or indirectly drafting, amending, advising or otherwise affecting the scope or maintenance of patent claims, but does not include representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes*

3

1  does not preclude any individuals from other activities in the field of satellite communications, such
2  as teaching, developing products, or working for other satellite communications companies.  The
3  duration of the bar, two years after final disposition of the action, is not unreasonable and was
4  agreed upon by both sides.  Therefore, the only remaining element of the threshold inquiry described
5  in *Deutsche Bank* to be considered is the subject matter covered by the bar.

6  AST and Comtech argue that any prosecution bar should be limited to patents that relate to
7  "self interference cancellation technology for *shared-channel, satellite communications*."  In support
8  of their argument for a narrow scope, AST and Comtech urge the Court to "assume that the existing
9  protective order [without the prosecution bar] will be strictly followed and that qualified individuals
10  receiving information subject to the protective order will refrain from misusing confidential and
11  proprietary information."  Docket No. 194 at 4.  In contrast, Defendants seek the inclusion of a
12  prosecution bar that applies to patents that relate to "self-interference cancellation technology,"
13  which they assert is the technology disclosed in the patents-in-suit and the technology accused of
14  infringement.  To support their position, Defendants have submitted evidence that Defendant
15  Viasat's confidential technology can be used broadly in the area of self-interference cancellation.
16  Thus there is a risk that its technology could be used in patenting an invention unrelated to shared-
17  channel satellite application, such as in wireless, wire line, or microwave communications.  *See e.g.*
18  Docket No. 178 at 8, Docket No. 179, Declaration of Donald W. Becker, ¶ 6.  AST and Comtech
19  concede that the technology at issue may be applied to other fields, but argue that a narrow scope is
20  all that is required as none of the parties currently have any products with applications outside of
21  satellite communications.

22  AST and Comtech's arguments against broader subject matter coverage of the prosecution
23  bar misapprehend the risk sought to be addressed by including a prosecution bar in a protective
24  order in the first place.  Notwithstanding AST and Comtech's assertions that individuals who receive
25  confidential information will "refrain from misusing" the information, "it is very difficult for the
26  human mind to compartmentalize and selectively suppress information once learned, no matter how

27
28  reexamination)." Defendants' Proposed Protective Order at 17.

4

well-intentioned the effort may be to do so." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980). In the course of this patent litigation, the parties and their representatives and consultants may access their opponents' highly confidential proprietary technical information. As individuals cannot simply purge selected information from their memory, the risk is that they may later use the knowledge gained from the confidential material, however inadvertently, in the prosecution of future patents.

Therefore, in determining the scope of the proposed prosecution bar, the relevant question is not to which field the accused products are *currently* limited, but instead in which fields the patented technology reasonably *could* be used, i.e. the areas of technology where there is risk that individuals may inadvertently exploit their new knowledge in future patent prosecution. Accordingly, the proper subject matter of the proposed prosecution bar in this case should be coextensive with the subject matter of the patents-in-suit, namely, the field of "self-interference cancellation technology."[2]

In sum, Defendants have met their burden to show that their proposed prosecution bar "reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information." *Deutsche Bank*, 605 F.3d at 1381. These threshold requirements being met, the Court moves to the next part of the analysis described in *Deutsche Bank*: weighing the risk of inadvertent disclosure by individuals involved in "competitive decisionmaking" against the potential injury to the opposing party from restrictions imposed on its choice of counsel. *Id*.

### B. Application of the Prosecution Bar

At this stage, the burden shifts to AST and Comtech as the objecting parties to demonstrate that their consultants should be exempt from a prosecution bar on an individual, or "counsel-by-counsel" basis. *Id*. For each person for whom an exemption is sought, the court must evaluate whether the person is a "competitive decisionmaker" whose participation in patent

---

[2] This scope is also consistent with the approach taken by other courts in holding that the subject matter covered by the bar should be limited to patent prosecution "relating to the subject matter of the patents-in-suit." *See e.g. Cheah IP LLC v. Plaxo, Inc.*, 2009 WL 1190331, at *2-3 (N.D.Cal. 2009) (citing to *Cummins-Alison Corp.*, 2003 U.S. Dist. LEXIS 23653, at *31-32 for the proposition that "a bar against prosecution 'relating to the subject matter of the patents-in-suit' is the language routinely employed by the courts when imposing a patent prosecution bar").

1 prosecution creates a risk of inadvertent disclosure of confidential information. *Id*. Here, AST and 2 Comtech object to the application of the proposed prosecution bar to any actual or potential expert 3 witnesses on the grounds that Defendants have made no showing that its experts will disclose, or 4 have threatened to disclose, Defendants' information in violation of the protective order.

5 Since *Deutsche Bank* was decided in 2010, there have been no cases extending its analysis to 6 expert witnesses. However, although the court in *Deutsche Bank* did not discuss the application of 7 prosecution bars to individuals *other* than attorneys, the prosecution bar at issue in that case 8 purported to apply to any "individual" who viewed confidential information. Similarly, the disputed 9 prosecution bar at issue here also applies to any "individual" who receives access to confidential 10 information.[3] Further, the concept of "competitive decisionmaking" as defined by the court in 11 *Deutsche Bank* turns on the extent to which an individual is involved in patent prosecution activities, 12 which are certainly not exclusively performed by attorneys. Therefore, the Court concludes it is 13 appropriate to analyze the application of the proposed prosecution bar to expert witnesses under the 14 framework set forth in *Deutsche Bank*.

15 The question of whether there is a risk of inadvertent disclosure by a particular individual 16 turns on the extent to which they are involved in "competitive decisionmaking" for a client. 17 *Deutsche Bank*, 605 F.3d at 1378 (citing to *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 18 (Fed. Cir. 1984)). "Competitive decisionmaking" is defined as "counsel's activities, association, and 19 relationship with a client that are such as to involve counsel's advice and participation in any or all 20 of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding 21 information about a competitor." *Deutsche Bank*, 605 F.3d at 1378 (*quoting U.S. Steel Corp*., 730 22 F.2d at 1468 n. 3). Such activities may include

> "obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to

---

[3] The protective order at issue in this matter was taken from the Northern District of California's model "Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets."

cover those inventions, or strategically amending or surrendering claim scope during prosecution." *Id*. at 1380.

If the court concludes that counsel is a "competitive decisionmaker" and thus there is a risk of inadvertent disclosure or competitive use, the risk must be balanced against the potential harm to the opposing party in denying it the counsel of its choice. *Deutsche Bank*, 605 F.3d at 1380. In evaluating this harm, the court must consider several factors: the extent and duration of counsel's past history in representing the client in litigation and before the U.S. Patent and Trademark Office (PTO), the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel to represent it before the PTO. *Id*. at 1381. "After balancing these competing interests, the court has broad discretion to decide what degree of protection is required." *Xerox v. Google*, 2010 WL 3502546 at *2, (D.Del. 2010).

Under that framework, AST and Comtech's argument that Defendants have not met their burden fails. *Deutsche Bank* does not hold that the party seeking a prosecution bar must show actual evidence that an individual will ignore a protective order; rather, it is *AST and Comtech's* burden to show that their experts should be exempt on an individual basis. *Deutsche Bank,* 605 F.3d at 1381. AST and Comtech have submitted no evidence showing why any specific experts should be exempt from the prosecution bar. Further, under *Deutsche Bank*, an expert witness who prepares or applies for patents themselves is undoubtedly a competitive decisionmaker. Indeed, the court in *Deutsche Bank* explained that attorneys involved in competitive decisionmaking were those "substantially engaged" in patent prosecution who had "the opportunity to control the content of patent applications," stating that "[s]uch attorneys would not likely be properly exempted from a patent prosecution bar." *Id*. at 1380 (emphasis added). An expert witness who acts as an inventor or technical advisor, as appears to be the case here based on a review of the submitted resumes of AST and Comtech's current experts, certainly controls the content of his or her own patent applications and thus falls squarely into the parameters of competitive decisionmaking as contemplated by the court in *Deutsche Bank*. Allowing experts who prosecute patents themselves to access confidential technical information *without* the protection of a prosecution bar thus poses a tremendous risk of inadvertent disclosure.

7

The risk of inadvertent disclosure by expert witnesses who prosecute patents themselves is amply demonstrated by the fact that potential experts for AST and Comtech have already declined to serve as experts in light of the proposed prosecution bar. For example, one witness, Dr. Theodore Rappaport, declined to be an expert for AST and Comtech because his job responsibilities "would be compromised if he were precluded from prosecution of any patents relating to self-interference cancellation technology." Docket No. 194-1, Declaration of Brett M. Hager, ¶ 5. Although AST and Comtech point to this in support of their argument that they have been harmed by the proposed prosecution bar in that it has precluded them from engaging some expert witnesses, the Court concludes that this demonstrates that the proposed prosecution bar worked exactly as it should, by preventing an individual who would admittedly be working as a competitive decisionmaker in the same field from having access to Defendants' confidential information.

In weighing Defendants' interest in protecting its confidential information against the potential harm to AST and Comtech from restrictions imposed on retaining their experts of choice, the Court notes that concerns about the potential injury to a party opposing a prosecution bar from restrictions imposed on its choice of counsel are not present here. Requiring a party to replace counsel with whom they may have a longstanding relationship "creates a much greater burden than requiring a party to hire different experts." *MercExchange, L.L.C. v. eBay, Inc.*, 467 F.Supp.2d 608 (E.D. Va. 2006). Further, the Court notes that AST and Comtech have already been able to retain two experts who have agreed to the proposed prosecution bar, and have made no showing that there is a dearth of experts in the field of satellite communications or that they will be seriously prejudiced by the imposition of the prosecution bar. That is not to say that the Court forecloses the possibility that the imposition of this prosecution bar may effectively preclude the parties from being able to retain necessary expert witnesses in this litigation. Therefore, in concluding that Defendants' proposed prosecution bar is both warranted and reasonable, and that the harm to the parties is not outweighed by the risk of inadvertent disclosure of confidential information, the Court hereby grants either party leave to file a motion at a future date to challenge the application of the prosecution bar to a specific expert witness or witnesses. Any such motion would necessarily require a particularized showing that warrants relief from the prosecution bar. For example, a party could

demonstrate that the available pool of experts with the relevant expertise in the field of satellite communications is so limited that the prosecution bar significantly impairs the party's ability to retain expert witnesses. As a further example, a party could demonstrate that a particular expert is not a competitive decisionmaker.

## II. Conclusion

For the foregoing reasons, Defendants' motion is GRANTED and the Court will enter a signed copy of the protective order.

IT IS SO ORDERED.

Dated: January 20, 2011



DONNA M. RYU
United States Magistrate Judge

9